UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
XU QI DONG, DE XING ZHENG,
QING DONG LIN, CHANG YONG          :
JIANG, BI ZHUI CHEN, ZHAO
QIN CHEN, XUE YONG LIN,            :
PING QIANG CHEN and GUANG              REPORT & RECOMMENDATION
ZIANG LIN,                         :
                                       08 Civ. 917 (JGK)(MHD)
              Plaintiffs,          :

         -against-                 :

MARK NG a/k/a KWOK FAI ENG,        :
LEILA NG, ROTHSTEIN & HOFFMAN
INTERNATIONAL INC., ROTHSTEIN      :
& HOFFMAN ELECTRICAL SERVICES,
WOOD CONCEPT INC., B.H.            :
PLUMBING AND HEATING CORP.,
B.H. FACILITY CONSTRUCTION         :
CORP., and MBH MECHANICAL CORP.,
                                   :
              Defendants.
--------------------------------x
TO THE HONORABLE JOHN G. KOELTL, U.S.D.J.:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/8/11

     Nine plaintiffs commenced this lawsuit against two individuals

and six corporations, asserting claims for denial of minimum or

contractually-required wages and overtime payments. The plaintiffs

asserted claims under provisions of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 et seq., and the New York State Labor Law

§§ 190 et seq. & 650 et seq., that govern minimum employee

compensation. Plaintiffs also invoked a claim under the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961

et seq.. They press these claims against defendant Mark Ng and his

1

wife, Leila Ng, as well as against a half-dozen companies that are said to be controlled by Mr. Ng (the "corporate defendants"). All of the claims are premised on work done by defendants for the New York City Health and Hospitals Corporation.

The defendants, although served with summonses and the complaint, failed to respond. (See Certificate of Default dated April 24, 2009). Accordingly, on June 23, 2009 the District Court ordered entry of a default judgment against the defendants and referred the case to me to conduct an inquest on damages. We scheduled a pre-inquest conference, which plaintiff's counsel attended, and at the conference we established a schedule for evidentiary submissions from both sides. (Order dated July 7, 2009). Defendants, although notified of the conference, failed to attend.

Plaintiffs have timely proffered affidavits and exhibits in support of their damages application.[1] They request compensation under the FLSA and New York's Labor Law, including liquidated damages, totaling $4,201,486.29, as well as unspecified attorney's

---

[1] Plaintiffs initially failed to file a memorandum of law. (See Endorsed Order dated Nov. 2, 2009 and Orders dated Nov. 12 and Dec. 21, 2009).

fees and costs. Defendants, though given the opportunity to respond, have chosen not to do so.

For the reasons that follow, we recommend that judgment be entered in favor of eight of the nine plaintiffs, in the amount of $2,134,907.62 plus pre-judgment interest. We further recommend that the corporate defendants be held jointly and severally liable for the full amount of the judgment, with defendant Mark Ng jointly and severally liable for $602,330.26 of that amount, plus pre-judgment interest.

## ANALYSIS

### 1. The Effect of a Default

In the wake of defendants' default, we must accept as true the well-pleaded allegations of the complaint that are pertinent to liability. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). We therefore rely on the factual allegations of the complaint, as well as the additional declarations filed by plaintiffs containing pertinent factual allegations. See, e.g., Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993);

3

Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). We are required, however, to determine whether those factual allegations, if deemed true, establish liability. Finkel, 577 F.3d at 84 ("[A] district court retains discretion [on default] . . . to require proof of necessary facts, and need not agree that the alleged facts constitute a valid cause of action.") (quoting Au Bon Pain Corp., 653 F.2d at 65). Furthermore, we do not automatically accept the allegations of the complaint relating to damages. See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). Instead, the plaintiffs must establish damages through pertinent evidence, such as affidavits or live testimony, ensuring "that there was a basis for the damages specified in the default judgment." See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. Conti Commodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

4

2. Assessment of Plaintiffs' Application

(a). The Pertinent Allegations of the Complaint

In plaintiffs' complaint they allege in substance that they worked for one or another of the six corporate defendants, all of which were involved in the contracting business run by defendant Mark Ng. They allege that these companies, which operated interchangeably, undertook a series of jobs for the New York City Health and Hospitals Corporation ("HHC"), and that under the terms of the companies' contracts with HHC, defendants were required to pay all workers on each project a contractually specified minimum wage. (Compl. ¶¶ 1-2, 9, 14, 24-25, 29, 70-72). They further allege that they were paid a weekly wage in cash that approximated $600.00 (Compl. ¶ 21), an amount that -- when averaged by the number of hours they worked -- amounted to an hourly rate somewhere between $9.50 and $12.50, well below the contractually required rate of pay. (Compl. ¶ 22). They go on to allege that the defendant companies were required to submit weekly payroll reports to HHC to confirm their compliance with the contractual pay requirements, and that in doing so the defendants mailed in false reports in which they represented that they were paying plaintiffs at the required hourly rates. (Compl. ¶¶ 3, 26-28, 31-33, 50).

5

Plaintiffs further assert that they were regularly required to work more than 40 hours per week, and were typically expected to work up to nine hours a day for six, and sometimes seven, days per week. (Compl. ¶¶ 10, 17, 18, 23, 64). They further allege that they were not paid the overtime required by federal and state law. (Compl. ¶¶ 23, 64).[2]

The allegations in the complaint establish, by virtue of defendants' default, that defendant Mark Ng controlled and managed the six defendant corporations, for which the plaintiffs worked, and that the companies were responsible for paying plaintiffs the required wages and overtime. (Compl. ¶¶ 10, 24-25). As for Mrs. Ng, the complaint alleges that she was employed by those same corporations, that she oversaw the payment of the plaintiffs and assisted her husband in preparing falsified payroll reports for the HHC. (Compl. ¶¶ 11, 33).

Based on these allegations, plaintiffs assert claims for failure to pay contractual wages and overtime, invoking the Fair Labor Standards Act and various provisions of the New York Labor Law. (Compl. ¶¶ 61-74). In addition, on the basis of the

---

[2] Plaintiffs also allege that defendants took an illegal five-percent kickback from their wages. (Compl. ¶¶ 65-66).

defendants' alleged repeated mailing of false payroll reports to HHC, plaintiffs assert that defendants engaged in a pattern of racketeering and by these actions defrauded plaintiffs of their wages, thus triggering RICO liability. (Compl. ¶¶ 39-60).

### (b). Plaintiffs' Evidentiary Submission

In plaintiffs' evidentiary submission on this inquest, they offer affidavits by eight of the nine plaintiffs as well as by their attorney.[3] Each plaintiff specifies the length of time during which he worked for the defendants and estimates the number of hours worked each week, as well as the pay that he received. (Declarations of Xu Qi Dong, De Xing Zheng, Qing Dong Lin, Chang Yong Jiang, Bi Zhui Chen, Zhao Qin Chen, Ping Qiang Chen and Guang Xiang Lin). Plaintiffs also offer calculations of what they claim they are owed under defendants' contracts with HHC and the amount of compensation that they assert they are entitled to under the FLSA and the Labor Law. (Id.; Decl. of Justin A. Zeller & Ex. B).

Plaintiffs seek to recover damages for both underpayment of

---

[3] The one plaintiff who has not been heard from in this fashion is Xue Yong Lin. For reasons to be noted, we therefore do not recommend an award for him.

the minimum rates specified in the contracts between the corporate defendants and HHC, and defendants' failure to pay time-and-a-half for work in excess of 40 hours per week. (E.g., Pls.' Mem. of Law at 12-13). They also request an award of liquidated damages, in part under federal law and in part under state law. (Id. at 14-16). This bifurcated aspect of their application is based on the fact that a plaintiff may receive a liquidated-damages award of 100 percent of unpaid wages under the FLSA, 29 U.S.C. §§ 216(b) & 260, but the pertinent statute of limitations for the FLSA is two years, except in the case of a willful violation, in which case the limitations period expands to three years. 29 U.S.C. § 255(a). In contrast, the New York statute permits a prevailing plaintiff to be awarded both his unpaid wages and liquidated damages calculated at 25 percent of the wages due him, but the limitations period under New York law is more generous than that set by the FLSA, and extends back for six years. N.Y. Labor Law §§ 198(3), 663(3). Hence plaintiffs seek liquidated damages under the FLSA for work done beginning January 1, 2006, and liquidated damages under the New York Labor Law for work done prior to that time. (Zeller Decl. ¶ 16).

In making their calculations of what they are owed, each plaintiff proffers estimates of the number of hours that he worked

8

for the corporate defendants during the period of their employment, and the compensation that he was paid. (E.g., Xu Qi Dong Decl. ¶¶ 6-9). Since defendants have either not retained, or else have simply failed to proffer here, any time or payment records, the plaintiffs' estimates of both hours worked and pay received are presumptively binding. See, e.g., Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946); Ke v. Saigon Grill, Inc., 595 F. Supp.2d 240, 254-55 (S.D.N.Y. 2008).

In addition, plaintiffs allege that defendants submitted false payroll reports to HHC, for which the corporate defendants were doing contract work, and they proffer a set of such forms dating from 2005 through 2007 and listing each of the plaintiffs as being paid at the required rates for the various projects, rates that were far more than plaintiffs were actually receiving. (See, e.g., Xu Qi Dong Decl. ¶ 6 & Ex. A). Relying on the hourly rates listed on the forms, plaintiffs infer that those rates reflect the compensation required by the defendants' contracts with HHC. Hence they calculate the shortfall between those figures and what they were paid and then include an increment for liquidated damages -- either 100 percent or 25 percent, depending on the time period involved. (Id. at Ex. B; See Zeller Decl. ¶¶ 6-14 (listing plaintiffs' contract rates and calculating damages)).

9

As for overtime, plaintiffs estimate the number of hours that they worked in excess of 40 hours per week, and then calculate the amount that they should have been paid and were not under the FLSA and the New York Labor Law. In doing this calculation, they rely upon the premise that their basic pay was the contractually required hourly rate for purposes of measuring the amount of overtime pay to which they are entitled. They then add to this total a liquidated damages amount calculated, again, at either 100 percent or 25 percent, depending on which time period is involved. (See, e.g., Xu Qi Dong Decl. ¶¶ 10-11 & Ex. B).

### (c). The Real Nature of Plaintiffs' Claims

Before addressing plaintiffs' calculations of what they are owed, we first consider what claims they may viably assert here based on the facts alleged in their complaint and the evidence that they proffer here. Although plaintiffs do not dwell on the specifics of their legal theories, their calculations reflect that they are assuming that the shortfall in their hourly payments for the first 40 hours per week triggers relief under the FLSA and the Labor Law, as if defendants had failed to pay them the statutory minimum wage. (See, e.g., id. Ex. B (measuring and including liquidated damages for wages paid below contractually required

10

amounts). They make this same assumption as to the statutory source
of a remedy with respect to their claims for compensation for
overtime.   We disagree in part with their analysis.


The FLSA requires, with certain exceptions, that employers pay
their employees at least a defined minimum wage, which was $5.15
per hour for most of the period relevant to this lawsuit,[4] but
climbed to $5.85 per hour on July 24, 2007, to $6.55 per hour one
year later, and to $7.25 one year after that. See 29 U.S.C. § 206
(2006); Fair Minimum Wage Act of 2007, Pub. L. 110-28, § 8102(a),
121 Stat. 112, 188 (raising the minimum wage to $5.85 per hour,
effective July 24, 2007, to $6.55 per hour, effective July 24,
2008, and to $7.25 per hour, effective July 24, 2009). New York's
minimum wage tracked the federal minimum wage at the beginning of
the relevant period, but increased annually beginning in 2005 until
it reached $7.15 per hour on January 1, 2007. N.Y. Labor Law §
652(1).[5] If the employer fails to pay these rates, he will be held
liable -- as noted -- for the full amount of the shortfall, and may

---

[4] Plaintiffs were employed by defendants between April 2004
and October 2007. (E.g., Decl. of Guang Xiang Lin at ¶¶ 2-3).

[5] New York's minimum wage also incorporates a requirement
that it track any future changes to the federal minimum wage that
would increase it above the state's floor. N.Y. Labor Law §
652(1).

be required as well to pay liquidated damages. Under federal law, liquidated damages will be imposed unless the employer demonstrates that he acted in good faith and had reasonable grounds to believe that he had not violated the law. 29 U.S.C. § 216(b), 260; see, e.g., Ke, 595 F. Supp.2d at 261 (citing cases). Until recently, New York law allowed the imposition of liquidated damages only if the employee demonstrated that the employer's violation was willful. See, e.g., Ke, 595 F.Supp.2d at 261. In 2009, however, New York's liquidated damages provision was retroactively amended to incorporate the federal standard. N.Y. Labor Law ¶¶ 198(1-a), 663(1); see also A. 6963, 232d Leg., 2009 Sess., §§ 1, 4 (N.Y. 2009).

In this case the record proffered by plaintiffs demonstrates that they were paid more than the statutory minimum wage at all times. Indeed, their estimate of the wages that they received and the hours that they worked reflects that their compensation amounted to between $9.68 and $13.68 per hour. (See, e.g., Xu Qi Dong Decl. Ex. B). Necessarily, then, they cannot recover for denial of statutory minimum wages under either the FLSA or the New York Labor Law.

On closer reading, plaintiffs' pleading and proof reflect that

12

their claim regarding the base pay to which they were entitled finds its origins purely in state law, more specifically, in section 220 of the Labor Law. That provision mandates that contractors doing construction work for various state and other public agencies in New York must pay their employees at so-called prevailing hourly rates, which are established by public authorities based on wages paid in the relevant geographic area for comparable work in the area. See N.Y. Labor Law §§ 220(3)(a), (c), (e), 220(3-a)(a)(I), 220(5). Moreover, it is required of such contracting agencies, when entering into contracts with companies to perform construction work, to include in those contracts the specified wage requirements. N.Y. Labor Law § 220(3)(a).

Plaintiffs' claim for underpayment of their base wages can be viewed either as arising directly under section 220 of the Labor Law or as a common-law claim for breach of contract. The fact that plaintiffs did not label their claim in these terms is not fatal to the success of their case, since the court must look to the factual allegations of the complaint as defining the nature of the claim rather depend upon the legal labels affixed to those factual allegations. See, e.g., Northrup v. Hoffman of Simsbury, Inc., 134 F.3d 41, 45-46 (2d Cir. 1997) ("stating that [t]he failure in a complaint to cite a statute, or to cite the correct one, in no way

13

affects the merits of a claim.") (citing cases).

The potential statutory claim, however, cannot survive on the current record, because the New York courts have consistently held that an aggrieved employee may sue the employer for violating section 220 by failing to pay prevailing wages only after he pursues administrative proceedings that lead to an agency determination that the employer has indeed violated the compensation provision of section 220.. See, e.g., Winsch v. Esposito Bldg. Specialty , Inc., 48 A.D.3d 558, 558-59, 852 N.Y.S.2d 199, 200 (2d Dep't 2008) (citing cases); Pesantez v. Boyle Envtl. Servs., Inc., 251 A.D.2d 11, 13, 673 N.Y.S. 2d 659, 661 (1st Dep't 1998) (citing cases); see also N.Y. Labor Law §§ 7, 7-a, 8.

That leaves plaintiffs with a straightforward breach-of-contract claim based on the defendants' asserted violation of the provisions of their contracts with HHC that mandated the payment of specified hourly rates. For purposes of such claims, although plaintiffs were not parties to those contracts, they are plainly third-party beneficiaries, as the New York Court of Appeals has recognized. See, e.g., Fata v. S.A. Healy Co., 289 N.Y. 401, 404-06, 46 N.E.2d 339 (1943); see also Cox v. NAP Constr. Co., 10 N.Y.3d 592, 601-03, 861 N.Y.S.2d 238, 241-42 (2008) (applying same

14

analysis to contract claim for contract under the Bacon Act).[6]
Moreover, such a common-law claim may be asserted absent the
administrative determination on which a statutory claim must be
predicated. See Fata, 289 N.Y. at 405-06, 46 N.E.2d at 341;
Dabrowski v. ABAX, Inc., 19 Misc. 3d 1134(A), 2008 WL 2120689, at
*3-4 (Sup. Ct. N.Y. Cty. May 5, 2008) (citing cases); Cf. Winsch,
48 A.D.3d at 559, 852 N.Y.S.2d at 200-01 (affirming summary
judgment dismissing section 220 claim for lack of administrative
findings and affirming contract-claim dismissal for lack of
adequate pleading of the contractual provisions).[7]

### (d). Calculation of Contract Damages

The determination of damages owed by defendants on this

---

[6] Plaintiffs do plead their status as third-party
beneficiaries. (Compl. ¶ 72).

[7] We note that CPLR 3013 appears to command a greater degree
of specificity in pleading contract-breach claims in New York
courts than may be required in federal court. See N.Y. C.P.L.R. §
3013; 767 Third Ave. LLC v. Greble & Finger, LLP, 8 A.D.3d 75,
75, 778 N.Y.S.2d 157, 158 (1st Dep't 2004) ("Plaintiff's failure
to identify any portion of the lease allegedly breached was fatal
to its cause of action for breach of contract."). Plaintiffs'
pleading in this case is adequate on its face, although it does
not specify the wage rates embodied in the pertinent contracts
with HHC. In any event, given both defendants' default here and
plaintiffs' proffer of the alleged fraudulent payroll records, we
deem the record sufficient to identify the contractual payment
requirements that the defendants allegedly breached.

straight-time claim is straightforward. Although plaintiffs may not recover liquidated damages, they are presumably entitled to an award of the difference between what they were paid and the amount to which they were entitled by virtue of the cited contracts between defendants and HHC. Since plaintiffs have proffered sufficient evidence of (1) the hours they worked, (2) the amounts they were paid, and (3) the hourly wages falsely reported by defendants as having been paid, and since defendants have failed to respond to that showing, we may calculate the total underpayment of base wages based on plaintiffs' proffer. The contracts required regular pay ranging from $28.00 to $44.00 per hour (see Xu Qi Dong Decl. ¶ 6 & Exs. A-B), and each plaintiff received substantially less than the contractual amount. The calculations, which are based on the testimony of the plaintiffs in their respective declarations, are as follows[8]:

---

[8] As mentioned before, we have received no declaration from plaintiff Xue Yong Lin, and hence do not recommend any award for him even though his attorney offers a set of calculations for him in the spread sheet cited as plaintiffs' Exhibit B. Absent evidence from Lin as to his work hours and compensation received, there is no competent evidence in the record on which to base an award, and hence he has failed to meet his burden of proof. For the record, we note that counsel calculates this plaintiffs' underpayment of contractual wages as $14,775.36 for February 1 to April 30, 2005; $34,416.00 for May 1 to December 31, 2005 and $14,340.00 for January 1 to April 1, 2006, for a total of $63,531.36. (See Zeller Decl. ¶ 11; Pls.' Ex. B).

16

| | Weeks Worked | Contract Rate[9] | Hourly Pay[10] | Hourly Shortfall | Total 40-Hour Shortfall |
|---|---|---|---|---|---|
| **Xu Qi Dong** | | | | | |
| 3/22/06 - 12/31/06 | 39 | $44.00 | $9.68 | $34.32 | $82,992.00 |
| 1/1/07 - 10/15/07 | 42 | $44.00 | $9.68 | $34.32 | $89,376.00 |
| **De Xing Zheng** | | | | | |
| 9/13/05 - 12/31/05 | 15 | $39.25 | $11.75 | $27.50 | $21,026.25 |
| 1/1/06 - 12/31/06 | 52 | $39.25 | $11.75 | $27.50 | $72,891.00 |
| 1/1/07 - 10/15/07 | 41 | $39.25 | $11.75 | $27.50 | $57,471.75 |
| **Qing Dong Lin** | | | | | |
| 3/15/06 - 8/1/06 | 20 | $43.00 | $9.68 | $33.32 | $41,320.00 |
| 3/15/07 - 10/14/07 | 30 | $43.00 | $9.68 | $33.32 | $61,980.00 |
| **Chang Yong Jiang** | | | | | |
| 12/1/04 - 12/31/04 | 56 | $43.00 | $13.68 | $29.32 | $93,576.00 |
| 1/1/06 - 12/31/06 | 52 | $44.00 | $13.68 | $30.32 | $89,856.00 |

---

[9] The contract rates are derived from the payroll reports prepared by defendants for each plaintiff and submitted to HHC.

[10] The actual hourly pay is calculated by dividing the weekly pay -- either $600.00, $660.00, $780.00 - by the total number of hours each plaintiff worked per week.

Zhao Qin Chen

| | | | | | |
|---|---|---|---|---|---|
| 10/1/05 - 12/31/05 | 12 | $44.00 | $11.58 | $32.42 | $22,176.00 |
| 1/1/06 - 12/31/06 | 52 | $44.00 | $11.58 | $32.42 | $96,096.00 |
| 1/1/07 - 9/1/07 | 36 | $44.00 | $11.58 | $32.42 | $66,528.00 |

Ping Qiang Chen

| | | | | | |
|---|---|---|---|---|---|
| 12/1/04 - 4/30/05 | 21 | $28.00 | $9.68 | $18.32 | $23.856.00 |
| 5/1/05 - 12/31/05 | 30 | $32.44 | $9.68 | $22.76 | $42,338.40 |
| 1/1/06 - 12/1/06 | 48 | $39.25 | $9.68 | $29.57 | $88,008.00 |

Guang Jiang Lin

| | | | | | |
|---|---|---|---|---|---|
| 10/1/04 - 12/31/04 | 12 | $32.44 | $9.68 | $22.76 | $16,935.36 |
| 1/1/05 - 12/31/05 | 52 | $43.00 | $9.68 | $33.32 | $107,432.00 |
| 1/1/06 - 12/31/06 | 52 | $43.00 | $9.68 | $33.32 | $107,432.00 |
| 1/1/07 - 10/15/07 | 41 | $43.00 | $9.68 | $33.32 | $84,706.00 |

Bi Zhui Chen

| | | | | | |
|---|---|---|---|---|---|
| 12/1/04 - 3/31/05 | 20 | $32.44 | $9.68 | $22.76 | $28.225.60 |
| 4/1/05 - 12/31/05 | 36 | $39.25 | $9.68 | $29.57 | $66,006.00 |
| 1/1/06 - 10/14/07 | 94 | $39.25 | $9.68 | $29.57 | $172,349.00 |

18

(e). <u>Calculation of Overtime-Claim Damages</u>

Plaintiffs also allege that their work week exceeded 40 hours and that they were not paid time-and-a-half for those additional hours, as required by the FLSA, 29 U.S.C. § 207(a)(1), and New York regulations, N.Y.C.R.R. tit. 12, § 142-2.2.[11] They estimate that their weekly work hours consistently exceeded 40 hours by between eleven and twenty-two hours. (<u>E.g.</u>, Xue Qi Dong Decl. ¶¶ 7-8 & Ex. B). As for what they were owed in overtime, they assume that the base wage from which the time-and-a-half rate is to be calculated is the contractual wage rate, rather than what defendants actually paid them, an assumption that is plainly correct since they were legally entitled to the higher base wage rate pursuant to the terms of the defendants' contracts with HHC.[12] Indeed, were it otherwise -- that is, if the time-and-a-half measure were based on what

---

[11] Section 220 of the Labor Law bars overtime work -- that is, more than eight hours per day, five days per week -- except in a narrowly defined set of circumstances. <u>See</u> N.Y. Labor Law § 220(2). Although this provision might raise a question as to the reliability of plaintiffs' allegations of overtime, since defendants have not responded to the complaint or to plaintiffs' evidentiary proffer, we have no occasion to question plaintiffs' representations, made under penalty of perjury, that they regularly worked overtime hours.

[12] The FLSA defines "regular rate" in general as including "all remuneration for employment paid to, or on behalf of, the employee . . . ." 29 U.S.C. § 207(e). The pertinent provisions of state law follow the federal statute. <u>See</u> N.Y.C.R.R. tit. 12, § 142-2.2.

19

defendants actually paid plaintiffs, even if in violation of the
Labor Law and defendants' contracts -- the employer would receive
a windfall for his unlawful conduct. Not surprisingly, the case law
recognizes that the determination of the "regular rate" for
purposes of calculating overtime is a function of contractual
arrangements, an analysis consistent with the assumption that
plaintiffs' straight-time pay is that reflected in the HHC
contracts. See, e.g., Walling v. Youngerman-Rynolds Hardwood Co.,
325 U.S. 419, 424-26 (1945); Brock v. Willamowsky, 833 F.2d 11, 14-
16 (2d Cir. 1987); Masters v. Maryland Mgt. Co., 493 F.2d 1329,
1332-33 (4th Cir. 1974); Sobczak v. AWL Indus., Inc., 540 F.Supp.2d
354, 359 (E.D.N.Y. 2007) ("[T]he FLSA can only increase, not
decrease, amounts to which employees are contractually entitled),
id. at 361 ("[S]ince an employer cannot insist on enforcement of
contractual pay provisions to escape its FLSA obligations, the
Court does not see how the employer can avoid its FLSA obligations
by breaching its contract.") (emphasis in original); see also Blue
v. Finest Guard Servs., Inc., 2010 WL 2927398, at *10-*11 (E.D.N.Y.
June 24, 2010) (awarding overtime on contractual rate under New
York Labor Law).[13]

---

[13] Although most of these cases dealt with agreements between
the employer and the employees, the same rationale applies when
the wage rate is set by contract between a public authority and
the employer for the benefit of the employees. See Sobczak, 540

Plaintiffs' calculation of overtime wages owed by defendants involves multiplying the number of weekly overtime hours by the plaintiff's applicable contract hourly wages and then increasing that figure by fifty percent. In addition, because the failure to pay overtime triggers a violation of both the FLSA and the New York Labor Law, see N.Y. Labor Law § 663; N.Y.C.R.R. tit. 12, § 142-2.2; Ke, 595 F.Supp.2d at 260-62, the plaintiffs add a figure for liquidated damages. Since the federal liquidated-damages provision is more generous than that available under New York law, but the New York statute of limitations is longer, the plaintiffs have included a 100 percent increment for all overtime work after December 31, 2005, and a 25 percent increase for all earlier overtime work. (See, e.g., Xue Qi Dong Decl. ¶¶ 10(c)-(d) & Ex. B).

The figures for compensation of plaintiffs' claims for overtime are as follows[14]:

---

F.Supp.2d at 359-61 (granting judgment on plaintiffs' "common law claims as third-party beneficiaries of contracts for public works, both federal and state.") (emphasis in original).

[14] Again, we do not include a recommended award for plaintiff Xue Yong Lin. The proffered overtime calculations for him total $5,352.69 for February 1 to April 30, 2005, $13,860.00 for May 1 to December 31, 2005 and $9,240.00 for January 1 to April 1, 2006. Once liquidated damages are included, Lin's calculated overtime damages total $29,607.60.

|  | Weekly Overtime Hours | Contract Overtime Rate | Overtime Owed Per Week | No. Of Weeks | Total Overtime Owed | Total with Liquidated Damages |
|---|---|---|---|---|---|---|
| **Xu Qi Dong** | | | | | | |
| 3/22/06 - 12/31/06 | 22 | $66.00 | $484.00 | 39 | $18,876.00 | $37,752.00 |
| 1/1/07 - 10/15/07 | 22 | $66.00 | $484.00 | 42 | $20,328.00 | $40,656.00 |
| **De Xing Zheng** | | | | | | |
| 9/13/05 - 12/31/05 | 11 | $58.88 | $215.88 | 15 | $3,238.13 | $4.047.66 |
| 1/1/06 - 2/31/06 | 11 | $58.88 | $215.88 | 51 | $11,225.50 | $22,451.00 |
| 1/1/07 - 10/15/07 | 11 | $58.88 | $215.58 | 41 | $8,850.88 | $17,701.75 |
| **Qing Dong Lin** | | | | | | |
| 3/15/06 - 8/1/06 | 22 | $64.50 | $473.00 | 20 | $9,460.00 | $18,920.00 |
| 3/15/07 - 10/14/07 | 22 | $64.50 | $473.00 | 30 | $14,190.00 | $28,380.00 |
| **Chang Yong Jiang** | | | | | | |
| 12/1/04 - 12/31/05 | 17 | $64.50 | $365.50 | 56 | $20,468.00 | $25,585.00 |
| 1/1/06 - 12/31/06 | 17 | $66.00 | $374.00 | 52 | $19,448.00 | $38,896.00 |
| **Zhao Qin Chen** | | | | | | |
| 10/1/05 - 12/31/05 | 17 | $66.00 | $374.00 | 12 | $4,488.00 | $5,610.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 1/1/06 - 12/31/06 | 17 | $66.00 | $374.00 | 52 | $19,448.00 | $38,896.00 |
| 1/1/07 - 9/1/07 | 17 | $66.00 | $374.00 | 36 | $13,464.00 | $26,928.00 |

**Ping Qiang Chen**

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/1/04 - 4/30/05 | 22 | $42.00 | $308.00 | 21 | $6,468.00 | $8,085.00 |
| 5/1/05 - 12/31/05 | 22 | $48.66 | $356.84 | 30 | $10,705.20 | $13,381.50 |
| 1/1/06 - 12/1/06 | 22 | $58.88 | $431.75 | 48 | $20,724.00 | $41,446.00 |

**Guang Xiang Lin**

| | | | | | | |
|---|---|---|---|---|---|---|
| 10/1/04 - 12/31/04 | 22 | $48.66 | $356.84 | 12 | $4,282.08 | $5,352.60 |
| 1/1/05 - 12/31/05 | 22 | $64.50 | $473.00 | 52 | $24,596.00 | $30,745.00 |
| 1/1/06 - 12/31/06 | 22 | $64.50 | $473.00 | 52 | $24,596.00 | $49,192.00 |
| 1/1/07 - 10/15/06 | 22 | $64.50 | $473.00 | 41 | $19,393.00 | $38,786.00 |

**Bi Zhui Chen**

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/1/04 - 3/31/05 | 22 | $48.66 | $356.84 | 20 | $7,136.80 | $8,921.00 |
| 4/1/05 - 12/31/05 | 22 | $58.88 | $431.75 | 36 | $15,543.00 | $19,428.75 |
| 1/1/06 - 10/14/07 | 22 | $58.88 | $431.75 | 94 | $40,584.50 | $81,169.00 |

23

(f). <u>Remaining Requested Relief</u>

Plaintiffs also request an award of attorney's fees. (Compl. at 14; Pls.' Mem. of Law at 19). To the extent that they prevail on their claims under the FLSA and the New York Labor Law, they would be entitled to such an award. 29 U.S.C. § 216(b); N.Y. Labor Law § 198(1-a). In contrast, the work that their counsel performed in support of what amounts to a contract claim would not be compensable unless sufficiently entwined with a federal or state statutory claim for which fees are available. <u>See</u>, <u>e.g.</u>, <u>Tran v. Tran</u>, 67 Fed. Appx. 40, 42-43 (2d Cir. 2003) (permitting fee award for time expended on RICO claims that "rest[ed] on a common core of fact, and offered an alternative legal ground for the remedy actually obtained under the successful FLSA claims."); <u>Dominic v. Consolidated Edison Co. of New York, Inc.</u>, 822 F.2d 1249, 1259-60 (2d Cir. 1987) (upholding fee award on multiple claims that "involve a common core of facts or [are] based on related legal theories.") (quoting, <u>inter alia</u>, <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435-37 (1983)); <u>see also</u> <u>Gottlieb v. Kenneth D. Laub & Co., Inc.</u>, 82 N.Y.2d 457, 463-65, 605 N.Y.S.2d 213, 217-18 (1993) (award of attorney's fees not permitted on breach-of-contract claim that did not also constitute a violation of Article 6 of New York Labor Law).

We need not assess whether fees might be awarded on any of the claims, however, because plaintiffs have failed to satisfy a fundamental requirement for a statutory fee award. In support of such an application the moving party must not only proffer an affidavit of counsel specifying the amount of time for which his client seeks such an award and the basis for the claimed hourly rate, but must support the application with adequately detailed contemporaneous time records. See, e.g., Local 335, United Service Workers Union, IUJAT v. Roselli Moving & Storage Corp., 2010 WL 3283553, at *2 (E.D.N.Y. July 20, 2010) (citing New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)). In this case plaintiffs have proffered nothing in support of their fee application, and hence on the current record we are unable to recommend such an award.

Finally, plaintiffs refer to an award of pre-judgment interest and costs. Plaintiffs are entitled to pre-judgment interest on their state-law awards of unpaid wages but not their federal-law awards. See, e.g., Ke, 595 F. Supp.2d at 261-62 (citing cases). Thus to the extent that plaintiffs may be awarded overtime for work in 2006 and 2007, they are not entitled to interest since the award of overtime for that period is requested under the FLSA in order to trigger the more generous liquidated-damages standard. As for

25

interest on the balance of the award of unpaid wages, plaintiffs do not offer a calculation, much less an explanation of their calculation (see Pls.' Memo of Law at 18), and we recommend that the calculation of interest -- set at nine percent under C.P.L.R. §§ 5001, 5004 -- be left to the Clerk of the Court, with the proviso that the interest be deemed to run from a "single reasonable intermediate date," N.Y. C.P.L.R. § 5001(b), which we suggest be January 1, 2006.

As for costs, plaintiffs are the prevailing parties, and they should be entitled to tax costs in accordance with the procedures specified in the rules of this court. S.D.N.Y. Local Civil Rule 54.1; Fed. R. Civ. P. 54(d)(1); see also Bierer v. Glaze, Inc., 2006 WL 2882569, at *10 (E.D.N.Y. Oct. 6, 2006).

(g). The Individual Defendants' Liability

Under both federal and New York statutory law, personal liability for violations of the FLSA and the New York Labor Law may be imposed on "employers".[15] The FSLA defines an employer as "any

---

[15] Since New York law parallels that of the FLSA in defining the scope of the term "employer", e.g., Jiao v. Chen, 2007 WL 4944767, *9 n.12 (S.D.N.Y. Mar. 30, 2007), we focus on caselaw interpreting the FLSA.

person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This term is to be broadly construed. As observed by the Second Circuit, "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer. . . . Above and beyond the plain language . . . the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact' in the national economy." Herman v. RSR Secs. Servs., Ltd., 172 F.3d 132, 139 (2d Cir. 1999).

This test rests on the "economic reality" of the relationship between the individual defendant and the business. Id. The court must look to such matters as whether the defendant has the power to hire and fire the employees, whether he supervises or controls their work schedule and performance, whether he determines compensation and methods of payment and whether he maintains employment records. Id. These factors are not exclusive, and the plaintiff need not satisfy all of them to demonstrate that a particular defendant is an employer. See, e.g., Zheng v. Liberty Apparel Co., 355 F.3d 61, 71 (2d Cir. 2003); Ke, 595 F.Supp.2d at 264-65.

Plaintiffs seek to hold defendants Mark Ng and his wife, Leila

27

Ng, individually liable for the awarded damages.[16] According to the allegations of the complaint -- which, due to defendants' default, are presumed to be true, see Finkel, 577 F.3d at 84 (citing, inter alia, Au Bon Pain Corp., 653 F.2d at 65) -- Mark Ng was the chief officer and owner in whole or in part of all of the corporate defendants. (Compl. at ¶¶ 10, 12). The corporate defendants entered into numerous HHC construction contracts, which obligated them to pay plaintiffs at specified contractual rates and to regularly certify that the plaintiffs had received the contractual rates. (Id. at ¶¶ 24-26). Mr. Ng was responsible for submitting fraudulent payroll reports that falsely listed plaintiffs' wages as higher and their hours as lower than they actually were. (Id. at ¶¶ 27-28, 31). He also had the power to hire and fire plaintiffs, set their wages and hours, and maintain their employment records. (Id. at ¶ 69). Plaintiffs submitted several HHC payroll certifications,

---

[16] In plaintiffs' complaint, they sought to hold both of the individual defendants personally liable for their alleged RICO violations. (See Compl. at p.7). Their FLSA and Labor Law claims, however, were pleaded against only Mark Ng and the corporate defendants. (Id. at pp. 12-13). In their submission for this inquest, however, plaintiffs request that we impose personal liability on both Mark and Leila Ng under the FLSA and the New York Labor Law, but do not address their previous allegations of RICO violations. (See Pls. Mem. of Law at 10-11). We therefore consider their RICO claim to be abandoned, and do not address it on this inquest. Our consideration of the issue of the personal liability of both individual defendants is restricted to plaintiffs' FLSA and New York Labor Law claims.

signed by Mr. Ng, which purported to show that plaintiffs had been paid the contractual rate for their hours and had worked significantly less than forty hours per week. (See generally Decl. of Xu Qi Dong at Ex. A). Taken together, these allegations show that Mr. Ng was plaintiffs' "employer" for the purposes of the FLSA and the New York Labor Law, and we therefore recommend that the district court hold Mr. Ng personally liable for the FLSA and New York Labor Law violations, that is, the failure to pay overtime.

As to Leila Ng, plaintiffs assert that she worked for the corporate defendants, oversaw the payment of the corporate defendants' employees, and assisted Mark Ng in the preparation of the fraudulent payroll certifications. (Compl. ¶ 33, Pls.' Mem. of Law at 11). These statements show that Leila Ng had some role in the creation, and possibly the maintenance, of employee records, but without more, they do not establish that she had the power to hire and fire plaintiffs, supervised or controlled their work schedule or performance, or determined their compensation or method of payment. We need not assess whether these allegations and the proof offered on this inquest could suffice to establish that Ms. Ng was an "employer" under the FLSA and the New York Labor Law. The short answer is that she may not be held liable for violations of those statutes because plaintiffs' complaint -- which forms the

basis of the current inquest -- did not assert its FLSA and Labor Law claims against her. Upon a defendants' default, she may be held liable only with respect to claims actually pled against her. See Fed. R. Civ. Pro. 54(c) ("A default judgment must not differ in kind from . . . what is demanded in the pleadings."); see also Mason Tenders Dist. Council Welfare Fund v. I.M.I. Constr. Corp., 2004 WL 1700615, at *2 (S.D.N.Y. July 30, 2004) ("[A] default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded.") (quoting 10 Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2663 (1998)); Kleartex (U.S.A.), Inc. v. Kleartex SDN BHD, 1994 WL 733688, at *14 (S.D.N.Y. June 9, 1994) ("Since the default in this case was entered against defendants with respect to a complaint that did not assert a claim against the Matex defendants for interference with the distribution contracts, plaintiff cannot now recover, by default, on such a claim . . . ."). Plaintiffs failed to name her as a defendant on the relevant claims.[17]

Finally, we recommend that neither Mr. nor Ms. Ng be held liable for the contract-breach damages. In this regard, we note that although the caption of plaintiffs' "Third Cause of Action" in

---

[17] Plaintiffs named Ms. Ng only on their RICO claim, which, as we noted above, they have not pursued on this inquest.

their complaint appears to state a claim for both New York Labor Law and contract violations against Mark Ng and the corporate defendants, plaintiffs did not allege that either Mark Ng or Leila Ng was a party to the contracts at issue in this case, nor did they allege that either of these individuals was personally liable for the breach-of-contract claims. Furthermore, they have offered no evidence at this inquest that either Mr. or Ms. Ng bound themselves, as individuals, to these contracts, or that the corporate veils should be pierced to hold Mr. Ng liable for corporate contractual obligations.[18] We therefore recommend that

---

[18] Generally, "piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Morris v. New York State Dept. of Taxation and Finance, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11 (1993). "Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance." TNS Holdings, Inc. v. MKI Securities Corp., 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 893 (1998) (quoting Morris, 82 N.Y.2d at 141-42, 603 N.Y.S.2d at 811). Rather, a plaintiff seeking to pierce the corporate veil must show a "causative element - i.e., the use of domination to cause the [plaintiff's] injury." EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 513 (S.D.N.Y. 2005); see also Network Enterprises, Inc. v. Reality Racing, Inc., 2010 WL 3529237, at *5 (S.D.N.Y. Aug. 24, 2010) ("If a plaintiff can establish that a defendant exercised complete domination over the corporation, it must then show that 'this control was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights, and that the control and breach of duty proximately caused the injury complained of.'") (quoting Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997)); Love v.

only the corporate defendants be held liable for the contractual violations -- that is to say, the failure to pay plaintiffs their full contractual wage.

CONCLUSION

For the reasons stated, we recommend that judgment be entered in favor of the plaintiffs against all of the corporate defendants according to the following schedule:

---

Rebecca Dev., Inc., 56 A.D.3d 733, 733, 868 N.Y.S. 2d 125, 126 (2d Dep't 2008) ("The party seeking to pierce the corporate veil must further establish that the controlling corporation abused the privilege of doing business in the corporate form to perpetuate a wrong or injustice against that party such that a court in equity will intervene."). This typically requires a showing -- or at least an allegation -- that the defendant abused the corporate form in an effort to fraudulently avoid a legal obligation, and, in doing so, injured the plaintiff. See EED Holdings, 228 F.R.D. at 513 (citing cases). Plaintiffs have alleged that Mr. Ng is the owner, in whole or in part, of the corporate defendants, that he exercised control over them, and that he and his wife transferred profits out of them. (Compl. at ¶¶ 12, 36). Plaintiffs have not, however, alleged that Mr. Ng's control of the corporate defendants was the means by which they were wronged, and hence they cannot succeed on a veil-piercing claim. Cf. Network Enterprises, 2010 WL 3529237, at *5-*6 ; EED Holdings, 228 F.R.D. at 513 (citing cases).

|  | Unpaid Overtime | Overtime + Liquidated Damages | Contract Damages | Total Damages |
|---|---|---|---|---|
| Xu Qi Dong | $39,204.00 | $78,408.00 | $172,368.00 | $250,776.00 |
| De Xing Zheng | $23,314.51 | $44,200.41 | $151,389.00 | $195,589.41 |
| Qing Dong Lin | $23,650.00 | $47,300.00 | $103,300.00 | $150,600.00 |
| Chang Yong Jiang | $39,916.00 | $64,481.00 | $183,432.00 | $247,913.00 |
| Zhao Qin Chen | $37,400.00 | $71,434.00 | $184,800.00 | $256,234.00 |
| Ping Qiang Chen | $37,897.00 | $62,912.50 | $154,202.40 | $217,114.90 |
| Guang Jiang Lin | $72,867.08 | $124,075.60 | $316,505.36 | $440,580.96 |
| Bi Zhui Chen | $63,263.50 | $109,518.75 | $266,580.60 | $376,099.35 |
| TOTAL DAMAGES: | $337,512.09 | $602,330.26 | $1,532,577.36 | $2,134,907.62 |

We further recommend that plaintiffs also be awarded pre-judgment interest on the entire contract damages award of $1,532,577.36. We also recommend that plaintiffs be awarded pre-judgment interest on only $121,156.15 of the total overtime-and-liquidated-damages award of $602,330.26. Finally, we recommend that defendant Mark Ng be held jointly and severally liable with the corporate defendants for the award of overtime and liquidated damages and the pre-judgment interest imposed on that award. As to defendant Leila Ng, we recommend that the complaint be dismissed against her.

33

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable John G. Koeltl, Room 1030, and to the undersigned's chambers, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, NY 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S. 1111 (1986).

DATED:   New York, New York
         March 8, 2011

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDG

34

Copies of the foregoing Report and Recommendation have been mailed this date to:

Justin A. Zeller, Esq.                    Mr. William Harvey
277 Broadway                              303 Grand Street, 3rd Floor
Suite 408                                 New York, NY 10002
New York, New York 10007

Mark Ng a.k.a. Kowk Fai Ng & Leila Ng
75-50 196th Pl.
Fresh Meadows, NY 11365

Rothstein & Hoffman International, Inc.
406 Broadway, 2d Floor
New York, NY 10013

Rothstein & Hoffman International, Inc.
255 Centre St.
New York, NY 10013

Rothstein & Hoffman Electrical Services
257 Centre St.
New York, NY 10013

Wood Concept, Inc.
396 Broome St.
New York, NY 10003

B.H. Plumbing & Heating Corp.
396 Broome St.
New York, NY 10003

B.H. Facility Construction Corp.
396 Broome St.
New York, NY 10003

B.H. Facility Construction Corp.
744 East 52nd St.
Brooklyn, NY 11203

MBH Mechanical Corp.
255 Centre St.
New York, NY 10013

Copies of the foregoing Report and Recommendation have been mailed this date to:

Justin A. Zeller, Esq.                  Mr. William Harvey
11 East Broadway                        303 Grand Street, 3rd Floor
Suite 9C                                New York, NY 10002
New York, New York 10038

Mark Ng a.k.a. Kowk Fai Ng & Leila Ng
75-50 196th Pl.
Fresh Meadows, NY 11365

Rothstein & Hoffman International, Inc.
406 Broadway, 2d Floor
New York, NY 10013

Rothstein & Hoffman International, Inc.
255 Centre St.
New York, NY 10013

Rothstein & Hoffman Electrical Services
257 Centre St.
New York, NY 10013

Wood Concept, Inc.
396 Broome St.
New York, NY 10003

B.H. Plumbing & Heating Corp.
396 Broome St.
New York, NY 10003

B.H. Facility Construction Corp.
396 Broome St.
New York, NY 10003

B.H. Facility Construction Corp.
744 East 52nd St.
Brooklyn, NY 11203

MBH Mechanical Corp.
255 Centre St.
New York, NY 10013

35